J-A01026-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JON M. MAISON | : | |
| | : | |
| Appellant | : | No. 1133 EDA 2025 |

Appeal from the Order Entered April 4, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0003992-2024

BEFORE:  DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:                         **FILED APRIL 2, 2026**

Jon M. Maison appeals from the order entered by the Montgomery County Court of Common Pleas which denied his motion to dismiss pursuant to the compulsory joinder rule.  *See* 18 Pa.C.S.A. § 110.  The trial court found that the motion was not frivolous and advised Maison of his right to immediately appeal the denial as a collateral order.  *See Commonwealth v. Schmidt*, 919 A.2d 241, 244 (Pa. Super. 2007).  After review, we affirm.

The trial court provided the following factual and procedural history in its Appellate Rule 1925(a) opinion.

> On January [20], 2024, at approximately 5:05 p.m. Maison's then wife ("Wife") and mother of his infant son called 911 from her car to report that Maison had threatened to put a gun to her head.  Trooper Roberto E. Arias-Garcia from the Pennsylvania State Police Skippack Barracks responded to a parking lot on Meyers Road in Perkiomen Township, Montgomery County, where he was told Wife would be waiting.  On the trooper's arrival, Wife relayed that

she and Maison had had an argument after he had been drinking, during which time he made the threat. As a result, Wife removed her son from the house, got in the car and drove away. After speaking with Wife in the parking lot, Trooper Arias-Garcia and other troopers proceeded to the family's residence to speak with Maison. Shortly after their arrival, Trooper Arias-Garcia observed Maison approaching his home in a black 2011 BMW. As they spoke, Trooper Arias-Garcia smelled a strong scent of alcohol emanating from Maison and observed Maison's son, Wife's stepson, in the back seat of the BMW. The troopers transported Maison to the Skippack Barracks where they read him his *Miranda* warnings and he consented to a blood draw.

Trooper Arias-Garcia filed a criminal complaint on January 21, 2024, charging Maison with Terroristic Threats, Harassment, and Driving Under the Influence ("DUI") under Montgomery County Docket No. 956-2024. Trooper Arias-Garcia presented the testimony of Wife at the preliminary hearing on February 12, 2024. Although Wife testified that Maison had been drinking alcohol, and Trooper Arias-Garcia introduced the results of the blood draw into evidence, he presented no testimony from law enforcement on the DUI charges. As a result, the Magisterial District Judge dismissed the DUI charges and held over the Terroristic Threats and Harassment charges for trial.

On April [30], 2024, Trooper Arias-Garcia filed a second Criminal Complaint against Maison, charging him with the same DUI violations as had been originally charged and recently dismissed in the original case. Maison waived his preliminary hearing on July 22, 2024, and the case proceeded to this court under Montgomery County Docket No. 3992-2024.

In the meantime, at the conclusion of a pretrial conference before the Honorable Thomas C. Branca in the original matter on June 20, 2024, Maison entered into a negotiated guilty plea on the charge of Terroristic Threats in exchange for a sentence of eighteen (18) months' probation. The Commonwealth *nolle prossed* the charge of Harassment as part of the negotiated plea agreement.

On August 29, 2024, Maison filed a Motion for Dismissal in the instant case [arguing that the former terroristic threats prosecution barred the subsequent DUI prosecution pursuant to the compulsory joinder rule, because the offenses occurred in the same criminal episode]. This court heard argument on the motion on April 4, 2025. That same day, the court issued its Order denying Maison's Motion for Dismissal, finding that the Motion was not frivolous, and advising Maison of his right to an immediate appeal. Maison filed a notice of appeal on April 21, [2025]. On April 29, 2025, the court issued an order directing Maison to file a Pa.R.A.P. 1925(b) Concise Statement of errors within twenty-one (21) days. On April 30, 2025, Maison filed his Concise Statement.

Trial Court Opinion (T.C.O.), 5/15/25, at 1-3 (footnotes omitted; Maison's name added).

Maison timely filed this appeal. He presents the following issue for our review:

1. Did the Trial Court err in denying Maison's Pretrial Motion for Dismissal, pursuant to the Compulsory Joinder Rule (18 Pa.C.S. §110)?

Maison's Brief at 6 (cleaned up; numbering and Maison's name added).

We begin with our standard of review. "Where the relevant facts are undisputed, the question of whether prosecution is barred by the compulsory joinder rule . . . is subject to plenary and *de novo* review." ***Commonwealth v. Copes***, 295 A.3d 1277, 1279 (Pa. Super. 2023) (citation omitted).

The compulsory joinder rule is codified in Section 110 of the Crimes Code, which provides as follows, in relevant part:

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

- 3 -

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:

[. . .]

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense or the offense of which the defendant was formerly convicted or acquitted was a summary offense or a summary traffic offense[.]

18 Pa.C.S.A. § 110(1)(ii).

Our Supreme Court has set forth a four-part test to determine when Section 110 bars a subsequent prosecution:

(1) the former prosecution must have resulted in an acquittal or conviction;

(2) the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution;

(3) the prosecutor was aware of the instant charges before the commencement of the trial on the former charges; and

(4) the current offense occurred within the same judicial district as the former prosecution.

**Commonwealth v. Fithian**, 961 A.2d 66, 72 (Pa. 2008) (citations omitted).

Here, the parties agree that the first, third, and fourth parts of the Supreme Court's test were met in this case. **See** Commonwealth's Brief at

12; Maison's Brief at 15-17. Thus, our analysis centers on the second part of the test: whether the current DUI prosecution was based upon the same criminal conduct or arose from the same criminal episode as the former terroristic threats prosecution.

> To determine whether various acts constitute a single criminal episode, a court must consider the logical relationship and the temporal relationship between the acts. Courts have recognized that although the relationship between the timing of actions is often determinative, in defining what acts constitute a single criminal episode, not only is the temporal sequence of events important, but also the logical relationship between the acts must be considered.
>
> Offenses are logically related when there is a substantial duplication of factual, and/or legal issues presented by the offenses. Whether there is substantial duplication of fact and law depends ultimately on how and what the Commonwealth must prove in the subsequent prosecution. For example, there would be substantial duplication if the Commonwealth's case rests solely upon the credibility of one witness in both prosecutions and there would not be substantial duplication if proof requires the introduction of the testimony of completely different police officers and expert witnesses as well as the establishment of separate chains of custody.

*Copes*, 295 A.3d at 1280 (internal citations and quotation marks omitted).

On appeal, Maison argues that the Commonwealth conceded the temporal relationship between the acts but argued that the logical relationship did not support a finding that the acts were a single criminal episode. *See* Maison's Brief at 20-21. He asserts, however, that the factual bases in the affidavits of probable cause for the terroristic threats and DUI charges were identical. *See id.* at 17-18.

- 5 -

According to Maison, the **Copes** case supports the finding of a single criminal episode because, here, the Commonwealth's case rests solely upon the credibility of one witness, Wife. **See id.** at 21-22. Further, Trooper Arias-Garcia was the same trooper involved in the entire investigation for all charges and would be the only witness, other than Wife, that the Commonwealth would need to call for either prosecution. **See id.** at 23-24. Therefore, the current DUI prosecution was inarguably based on the same criminal episode as the former terroristic threats prosecution, and Maison is entitled to the charges being dismissed. **See id.** at 24.

The trial court explained its rationale for denying Maison's motion as follows:

> Here, although the offenses are temporally related as they occurred within hours of each other, they are not logically related in that they do not require proof of any of the same elements. Maison and Wife were inside of their home during an argument when Maison threatened to put a gun to Wife's head, causing her to flee in her car with her infant son. These facts form the basis of the charge for Terroristic Threats, an offense to which Maison pled guilty. At a trial for Terroristic Threats, although the Commonwealth could offer the testimony of Trooper Arias-Garcia, Wife would serve as the primary witness and it is her credibility that would be at issue.
>
> After threatening Wife, Maison then placed his other son in the backseat of his BMW and drove away. On arrival at the residence after speaking with Wife in a parking lot, Trooper Arias-Garcia observed Maison return to the home in his BMW and smelled the scent of alcohol coming from Maison's person. Maison subsequently consented to a blood draw. The Commonwealth would present Trooper Arias-Garcia as the primary witness to testify regarding his observations and a law enforcement officer to establish the

> chain of custody and results of the blood draw. The prosecutions are not based on the same criminal conduct. Moreover, there is little, if any, duplication in the witnesses or evidence necessary to support the respective charges. Consequently, this court determined that the terroristic threats offense and the DUI offenses constituted two separate and distinct criminal episodes. Accordingly, the court properly denied Maison's Motion for Dismissal.

T.C.O. at 7-8 (Maison's name added).

Both parties and the trial court concur that the terroristic threats and DUI offenses were temporally related. The question that remains is whether they were also logically related. We agree with the trial court and the Commonwealth that the offenses were not logically related.

To begin, the elements required to prove the crimes of terroristic threats and DUI are distinct.

The Crimes Code provides the following for terroristic threats, in relevant part:

> **(a) Offense defined.--**A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
> > (1) commit any crime of violence with intent to terrorize another[.]

18 Pa.C.S.A. § 2706(a)(1).

The Vehicle Code provides the following for DUI, in relevant part:

> **(a) General impairment.--**
>
> > (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving,

operating or being in actual physical control of the movement of the vehicle.

[. . .]

**(b) High rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1), (b).

Terroristic threats requires a person to communicate a threat to commit any crime of violence with intent to terrorize another. *See* 18 Pa.C.S.A. § 2706(a)(1). It includes no element related to alcohol. Conversely, DUI requires an individual to drive, operate, or be in actual physical control of the movement of a vehicle after consuming enough alcohol to be incapable of doing so safely. *See* 75 Pa.C.S.A. § 3802(a)(1). Unlike terroristic threats, DUI includes no element related to a threat or intent to terrorize. Thus, these offenses present no substantial duplication of legal issues because the Commonwealth must prove entirely different elements for each offense. *See Copes*, 295 A.3d at 1280; *Commonwealth v. Brown*, 212 A.3d 1076, 1083 (Pa. Super. 2019) (adopting the trial court's opinion which "found that there was no commonality of legal issues, because the alleged crimes did not have any overlapping elements" (citation omitted)).

Moreover, here, the conduct giving rise to each charge was distinct. Maison threatened Wife at their home, which is the conduct that gave rise to

the terroristic threats charge, and she left in her car. When Maison left the residence in his car, the conduct that gave rise to the terroristic threats charge had ended. Later, Maison returned to the neighborhood in his car, and Trooper Arias-Garcia smelled the scent of alcohol coming from him. Maison consented to a blood draw. Driving the car while intoxicated was the conduct that gave rise to the DUI charges, and this conduct occurred after Maison left the home. Thus, these offenses present no substantial duplication of fact because the conduct giving rise to each charge was distinct. ***See Brown***, 212 A.3d at 1083 (adopting the trial court's opinion which explained that the conduct that gave rise to the alleged vehicle code violations occurred prior to appellant's return to his residence, where the alleged assault occurred).

Additionally, as the trial court concluded, there is little duplication in the witnesses or evidence necessary to support the respective charges. For the terroristic threats charge, the key witness would be the Wife. However, her testimony is not relevant for the DUI charges. Although Wife could testify that Maison was intoxicated before she left the home, she could not testify to what occurred after she left, *i.e.*, that Maison drove his vehicle while under the influence. For the DUI charges, the key witnesses would be Trooper Arias-Garcia, who witnessed Maison return in his vehicle and smelled alcohol coming from him, and a witness who could testify about the results of the subsequent blood draw.

Given that separate witnesses would testify as to these charges, any "duplication of evidence would be *de minimis* and inadequate to establish that

the charges were logically related." ***Copes***, 295 A.3d at 1281; ***see Brown***, 212 A.3d at 1083.[1] Thus, the trial court did not err in denying Maison's motion to dismiss pursuant to the compulsory joinder rule.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/2/2026

---

[1] Maison's reliance on ***Copes*** is misplaced. In ***Copes***, the appellant punched the victim. Detectives were given the appellant's description and reviewed surveillance video. Approximately an hour later, police officers recognized the appellant from the description and video and attempted to arrest him. As they approached, he fled and threw a backpack containing a firearm. He was charged with simple assault and recklessly endangering another person for punching the victim. On a separate docket, he faced three charges of unlawful possession of a firearm. The appellant pleaded guilty to simple assault to resolve the assault charges and then filed a motion to dismiss the firearm charges pursuant to Section 110. The trial court granted the motion, and the Commonwealth appealed.

This Court reversed the trial court, finding that there was no logical relationship between the acts that led to the assault and firearm charges. The appellant had not used the firearm in the earlier assault. The key witness for the assault charges would be the victim, whereas the key witnesses for the firearm charges would be the police officers that witnessed the appellant throwing away the backpack containing the firearm. The surveillance video of the assault did not present evidence relevant to the firearm charges. Similarly, here, as explained *infra*, there would be different key witnesses and evidence to support the terroristic threats and DUI charges. Thus, contrary to Maison's argument, ***Copes*** supports our result.